## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JACQUELINE MANNING, Individually and on
Behalf of the General Public
2116 R. St., NE
Washington, DC 20002

                Plaintiff,

      v.

WALMART STORES, INC.
702 SW 8th Street
Bentonville, AK 72716

               Defendant.

Civil Case No. 1:15-cv-00439-RWB
Hon. Reggie B. Walton

**ORAL ARGUMENT REQUESTED**

## DEFENDANT WALMART STORES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Walmart Stores, Inc. ("Walmart" or "Defendant"), by and through its undersigned counsel, hereby respectfully submits its Memorandum of Law in Opposition to Plaintiff Jacqueline Manning's ("Plaintiff") Motion to Remand. As explained below, this Court has original jurisdiction over this case and Plaintiff's Motion to Remand should be denied.

### I.    Introduction

This Court has original subject matter jurisdiction over this case on two separate and independent grounds. First, the Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000. Second, the Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), because this case is a class action in which the amount in controversy exceeds $5,000,000.

On the first ground of diversity, there is no dispute that the parties are diverse. However, Plaintiff tries to avoid federal jurisdiction by incorrectly implying that Defendant has the burden

to prove that the amount in controversy exceeds $75,000, and then arguing that this burden cannot be met because any calculation of the amount in controversy would be "speculative." In fact, when (as here) the alleged damages are unspecified in a plaintiff's state court Complaint, the defendant's burden is only to establish the "jurisdictional facts," *i.e.* what the plaintiff seeks to recover, by a "preponderance of the evidence." Then, "the burden shifts to the plaintiff who can avoid the retention of jurisdiction and secure the case's remand to state court only by proving to a legal certainty that he or she cannot recover in excess of the jurisdictional amount." 14AA Charles Alan Wright, et al., *Federal Practice & Procedure* § 3702.2 (4th ed. 2008 & Supps.). As discussed below, Defendant has met its burden. Plaintiff has not even attempted to meet hers. Given Plaintiff's claim for statutory damages, punitive damages, and attorneys' fees, the Court cannot conclude "to a legal certainty" that Plaintiff cannot recover in excess of $75,000.

With respect to CAFA, Plaintiff's sole argument against jurisdiction is that her representative action under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3905 ("CPPA"), is not a class action. Although several prior district court decisions have supported this position, Defendant respectfully submits that those decisions were based on the premise that the CPPA provides a separate ***procedural*** vehicle for bringing representative claims. It does not. The CPPA provides substantive remedies and grants individuals standing to bring representative claims, but representative claims under the CPPA are subject to the same procedural rules – including class certification requirements – as any other representative claims. Thus, as the courts of the District of Columbia have made clear, Plaintiff's claim for money damages on behalf of absent third parties must be litigated as a class action. Plaintiff cannot avoid federal jurisdiction merely by failing to label her lawsuit what it is: a class action.

Defendant, therefore, respectfully requests that the Court deny Plaintiff's motion to remand.

II.     **Factual Allegations and Procedural Background**

A.      **The Walmart Herbal Supplement Class Actions**

On February 3, 2015, the New York State Attorney General publicly announced that the office had issued cease and desist letters to four retailers – Walmart, Target, Walgreens, and GNC – which alleged that certain herbal supplements sold by these retailers were mislabeled and/or contained adulterated ingredients. The New York Attorney General's allegations relied on a testing method that has been widely rejected by the scientific community as a reliable method for determining the contents of plant-based dietary supplements, and Walmart is confident that the products in question are fully compliant, safe, and properly labeled. Nevertheless, plaintiffs across the country (including in this case) immediately filed putative class action complaints that did nothing more than echo the New York Attorney General's allegations. To date, in addition to the instant action, Walmart has been named as a defendant in at least 37 putative class action lawsuits now pending in federal courts.

On February 16, 2015, a Motion for Consolidation and Transfer under 28 U.S.C. § 1407 was filed before the United States Judicial Panel on Multidistrict Litigation ("JPML") in a proceeding styled *In re: Wal-Mart Stores, Inc. Herbal Supplements Marketing and Sales Practices Litigation*, MDL Docket No. 2620. The instant case was identified as a related action on March 26, 2015. Similar motions to consolidate and transfer were also filed with respect to actions against Walgreens (MDL No. 2619), GNC (MDL No. 2621), and Target (MDL No. 2622).

The JPML will hear the motions for consolidation and transfer on May 28, 2015, and it is expected to order the consolidation and transfer of the actions soon thereafter. Based on the expectation that this action will be transferred to the MDL court, the parties have agreed to (and the Court has entered) a stay of this litigation, with the exception of proceedings related to this motion for remand.

**B.      Plaintiff's Allegations**

On February 4, 2015, just one day after the New York Attorney General's public release of its cease and desist letters, Plaintiff filed the instant action seeking relief against Walmart under the District of Columbia's consumer protection statute, on behalf of herself and "on behalf of the general public." (Complaint, ¶ 40.) Plaintiff's Complaint echoes the allegations of the New York Attorney General, and is substantively similar to each of the other 37 putative class action complaints now pending in federal courts.

Specifically, Plaintiff alleges that herbal supplements sold by Walmart under the private label "Spring Valley" "are often mislabeled in that the product within the packaging is not the dietary supplement that Walmart purports it to be." (Complaint, ¶ 14.) For example, Plaintiff alleges that "the Ginkgo Biloba supplement contains no Ginkgo Biloba" and "the Ginseng supplement contains no Ginseng." (Complaint, ¶¶ 18, 20.) Thus, Plaintiff alleges that "the Spring Valley line of supplements deceives Walmart's consumers by failing to provide the herbal supplements listed." (Complaint, ¶ 15.)

Prior to filing her Complaint, Plaintiff alleges that she *routinely* purchased Walmart's "Spring Valley" supplements, stating:

> Plaintiff Jacqueline Manning has *routinely* purchased the following dietary
> supplements from Walmart's Spring Valley line of supplements for her own
> personal use and consumption[:] a. Ginkgo Biloba[;] b. St. John's Wort[;] c.
> Ginseng[;] d. And other Spring Valley Products.

(Complaint, ¶ 27 [emphasis added].) Because Plaintiff's Complaint lists three specific separate products purchased by Plaintiff, and item (d) – "other Spring Valley Products" – is stated in the plural, Plaintiff's allegations establish that she has purchased *at least* five separate "Spring Valley" products. In fact, Plaintiff's use of the word "routinely" to describe her purchases indicates that the total number of purchases is substantially greater than five.

Based on these allegations, Plaintiff brings a single claim against Defendant under the CPPA. Plaintiff seeks the following relief "for herself and on behalf of the general public": (1)

restitution to consumers of money obtained by Defendant "by means of the unlawful trade practice"; (2) "statutory relief the court determines proper under D.C. Code § 28-3905(k)(1)"; (3) punitive damages; (4) attorneys' fees; and (5) an injunction against Defendant's sale of "Spring Valley" products "without properly identifying and labeling the ingredients in its supplements." (Complaint, ¶ 46.)

## III.   **This Action was Properly Removed Based on Diversity Jurisdiction**

### A.   **Legal Standard**

A civil action filed in state court may be removed to a United States District Court if the case could originally have been brought in federal court. 28 U.S.C. § 1441(a). Original jurisdiction exists in federal court for suits between "citizens of different States" when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Thus, "[w]hen the parties are diverse and the amount in controversy is sufficient, a defendant has a statutory right to remove an action from state court and avail himself of the federal court system." *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 65-66 (D.D.C. 2002).

Here, there is no dispute that that the parties are diverse. Plaintiff is a citizen of the District of Columbia (Complaint, ¶ 4), and Walmart is a citizen of Delaware and Arkansas. (Declaration of Nagarajan Vaidyanathan ["Vaidyanathan Decl."], ¶ 2.) Thus, the only issue in dispute is whether the amount in controversy exceeds the $75,000 threshold.

When, as here, the alleged amount of damages is unspecified in a plaintiff's state court Complaint, the "preponderance of evidence" standard governs the determination of the amount in controversy. *Parker-Williams v. Charles Tini & Associates, Inc.*. --- F. Supp. 3d ---, 2014 WL 3278585 at *2 (D.D.C. July 9, 2014); *Mostofi v. Network Capital Funding Corp.*, 798 F. Supp. 2d 52, 55 (D.D.C. 2011); *Williams v. Purdue Pharma Co.*, 2003 WL 24259577 at *5 (D.D.C. Feb. 27, 2003). Under the "preponderance of the evidence" standard, a defendant's burden is met by establishing the "jurisdictional facts," *i.e.*, what the plaintiff is seeking to recover. *McPhail v. Deere and Company*, 529 F.3d 947, 955 (10th Cir. 2008) ("It is only the jurisdictional facts that

must be proven by a preponderance - not the legal conclusion that the statutory threshold amount is in controversy."). "Once the removing defendant meets the applicable burden of proof, the burden shifts to the plaintiff who can avoid the retention of jurisdiction and secure the case's remand to state court only by proving to a legal certainty that he or she cannot recover in excess of the jurisdictional amount." 14AA Charles Alan Wright, et al., *Federal Practice & Procedure* § 3702.2 (4th ed. 2008 & Supps.); *McPhail*, 529 F.3d at 954 (once underlying jurisdictional facts are proven, "a defendant (like a plaintiff) is entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake").

The "amount in controversy is not proof of the amount that the plaintiff will recover," but "is an estimate of the amount that will be put at issue in the course of litigation." *McPhail*, 529 F.3d at 956. Thus, "[o]nce the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal." *Meridian Secs. Ins. Co. v. Sadowski*, 441 F.3d 540, 543 (7th Cir. 2006).

A district court may base its determination of the amount in controversy on the allegations contained within the complaint and on the facts that are subsequently developed in the record. *See Corwin Jeep Sales & Serv., Inc. v. Am. Motors Sales Corp.*, 670 F. Supp. 591, 596 (M.D.Pa. 1986). This determination does not require an "item-by-item accounting of the claims." *Parker-Williams*, 2014 WL 3278585 at *2. "Instead, courts may consider the evidence provided to them and exercise some degree of common sense in order to independently determine whether the amount in controversy has been met." *Id.*; *see Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62, 64 (11th Cir. 2010) (in determining amount in controversy, the district court may "make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings.")

**B.** **The Amount in Controversy Requirement is Satisfied Based on Plaintiff's Individual CPPA Claim**

Plaintiff's individual claim alone is more than sufficient to satisfy the amount in controversy requirement. In part, Plaintiff seeks: (1) "statutory relief the court determines proper" under the CPPA; (2) punitive damages; and (3) attorneys' fees. (Complaint, ¶ 46.) Together, these requested individual remedies exceed the $75,000 threshold amount.

1. Statutory Relief under the CPPA

The CPPA provides for statutory damages of "$1,500 per violation." D.C. Code § 28-3905(k)(2)(A). As discussed above, Plaintiff's Complaint evidences that Plaintiff purchased *at least* five separate "Spring Valley" products: (1) Ginkgo Biloba; (2) St. John's Wort; (3) Ginseng; and (4) "other Spring Valley Products" (stated in the plural, meaning two or more). (Complaint, ¶ 27.) Based on at least five alleged violations, Plaintiff individually alleges statutory damages of at least $7,500. In fact, Plaintiff's allegation that she "routinely" purchased these five products means that her actual number of purchases – and the corresponding statutory damages at issue – are certainly higher.

In her motion to remand, Plaintiff tries to rewrite her Complaint in order to reduce the statutory damages at issue, contending that "only six products have been identified as deceptive by Ms. Manning's complaint; and Ms. Manning identified only three that she herself had purchased." (Motion, p.10.) In essence, Plaintiff wants the Court to ignore the allegation that she purchased "other Spring Valley Products." Yet, while Plaintiff specifically identifies only six products in her Complaint, she does not limit her claim to just those products. Just the opposite: Plaintiff alleges that the *entire* "Spring Valley" line of supplements is "deceptive" to consumers: "the Spring Valley line of supplements deceives Walmart's consumers by failing to provide the herbal supplements listed." (Complaint, ¶ 15.) And she expressly states that the supplements at issue in the case "include[] but [are] not limited to" the six supplements specifically identified "[a]nd other supplements." (Complaint, ¶ 14.) Moreover, Plaintiff seeks an injunction applying to the entire "Spring Valley" line of products, asking "that Walmart be barred from producing,

7

manufacturing and packaging 'Spring Valley' dietary supplements without properly identifying and labeling the ingredients in its supplements." (Complaint, ¶ 46(a).) Thus, Plaintiff's Complaint facially covers the entire "Spring Valley" line of products. Plaintiff cannot now seek to rewrite her Complaint in an effort to avoid federal jurisdiction.

2.     Punitive Damages

Punitive damages must be considered in computing the jurisdictional amount in controversy as long as the plaintiff's request for punitive damages "has at least a colorable basis in law and fact." *Thomas v. National Legal Professional Associates*, 594 F. Supp. 2d 31, 33 (D.C.Cir. 2009). In considering whether punitive damages satisfy the jurisdictional minimum on a motion for remand, "the court must conduct a two-part inquiry." *Nwachukwu*, 223 F.Supp.2d at 66. "First, the court must determine whether the plaintiff can recover punitive damages as a matter of governing substantive law." *Id.* "If so, the court has subject matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." *Id.*

There is no dispute regarding the first part of the inquiry. Plaintiff seeks punitive damages in her Complaint (Complaint, ¶ 46(c)), and the CPPA provides that a plaintiff may recover punitive damages. D.C. Code § 28-3905(k)(2)(C). Specifically, punitive damages are available under the CPPA where evidence shows that the defendant acted with "a state of mind evincing malice or its equivalent." *Griffith v. Barnes*, 560 F. Supp. 2d 29, 37 (D.D.C. 2008). Thus, in *Griffith*, the court found that punitive damages were available in a case where "defendants made misrepresentations and failed to disclose material information." *Id.* at 38. Plaintiff makes similar allegations here, alleging that Defendant intentionally misleads consumers concerning the contents of its herbal supplement products. (Complaint, ¶ 44.) As noted above, Plaintiff's substantive allegations are specious and will be vigorously contested by Defendant.  But, that is irrelevant at this stage of the litigation; what matters for jurisdictional purposes is that Plaintiff's allegations are sufficient to put punitive damages at issue under governing substantive law.

8

Once punitive damages are at issue, "the court has subject matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." *Nwachukwu*, 223 F. Supp. 2d at 66. Under this standard, courts have repeatedly found that the amount in controversy requirement was satisfied in situations similar to here. *See, e.g., Thomas*, 594 F. Supp. 2d at 33-34 (amount in controversy requirement satisfied where plaintiff alleged $10,000 in actual damages, because the court could not say with a "legal certainty" that plaintiff could not recover $65,000 in punitive damages); *Lopez v. Council on American-Islamic Relations Action Network, Inc.*, 741 F. Supp. 2d 222, 233-234 (amount in controversy requirement satisfied where plaintiff sought actual damages of $8,925 because court could not conclude "to a legal certainty" that plaintiff could not recover $66,075 in punitive damages).

In both *Thomas* and *Lopez*, federal jurisdiction was challenged based on the argument that the ratio of potential punitive damages to actual alleged damages necessary to meet the $75,000 threshold (6.5 to 1 in *Thomas* and 7 to 1 in *Lopez*) was excessive and, thus, would violate the Due Process Clause. Both courts rejected the argument, recognizing that the Supreme Court "has been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damage award." *Thomas,* 594 F. Supp. 2d at 33; *see Lopez*, 741 F. Supp. 2d at 234. Instead, "[t]he closest the Supreme Court has come to establishing a hard ratio on punitive damages is to admonish that 'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Thomas*, 594 F. Supp. 2d at 33-34. Thus, "single digit multipliers . . . are more likely to comport with due process." *Id.*

Even if there were only $7,500 in statutory damages alleged here, a 9-1 ratio of punitive damages to statutory damages would be sufficient to reach the $75,000 threshold. This ratio is within the "single digit multipliers" that the Supreme Court has recognized may satisfy due process concerns, and that the *Lopez* and *Thomas* courts found provided an appropriate basis for finding federal jurisdiction.

In fact, the true ratio necessary to meet the $75,000 threshold is even lower. As discussed above, the $7,500 in statutory damages assumes that Plaintiff purchased each "Spring Valley" product identified in her Complaint just once, while her Complaint alleges that she "repeatedly" purchased these products. Plaintiff argues that this is "speculative," but the language of her Complaint necessarily implies that Plaintiff made multiple purchases of these products. As explained in *Parker-Williams*, the Court may "exercise some degree of common sense," 2014 WL 3278585 at *2, in order to conclude that the actual amount of purchases would implicate statutory damages well in excess of $7,500, reducing the 9-1 ratio of punitive to actual damages that is already within the range of the multipliers recognized as sufficient to confer federal jurisdiction in *Lopez* and *Thomas*. The ratio would be reduced even further when attorneys' fees are included, as discussed further below.

Moreover, this District Court has previously awarded $100,000 in punitive damages to a single plaintiff under the CPPA despite the plaintiff receiving ***no recovery*** of actual or statutory damages. *Griffith*, 560 F. Supp. 2d at 38. Thus, the Court cannot conclude "beyond a legal certainty" that Plaintiff would be unable to recover a 9-1 (or lower) ratio of punitive damages here.

Finally, Plaintiff argues that "[t]he well-reasoned opinions of *Thomas* and *Lopez* are . . . inapplicable to this matter" because they concerned motions challenging the jurisdiction of claims originally filed in federal court. (Motion, p.13.) *Thomas* and *Lopez*, however, apply the same standard as *Nwachukwu*, a case arising on a motion to remand. 223 F. Supp. 2d at 66 (denying motion to remand because amount in controversy satisfied by punitive damage allegation based on two-part test cited above). In any event, Plaintiff creates a distinction without a difference – the standard for jurisdiction under Section 1332 does not differ based on whether the case is originally filed in Federal court or removed. *See* 28 U.S.C. § 1441(a). As Plaintiff acknowledges, the opinions of *Thomas* and *Lopez* ***are*** well-reasoned, and the same reasoning is applicable whether on a motion to dismiss or a motion to remand.

3.    <u>Attorneys' Fees</u>

Prospective attorneys' fees that may be recovered in an action must be considered as part of the amount in controversy when they "are provided for by a statute in controversy." *Parker-Williams*, 2014 WL 3278585 at * 3. Here, Plaintiff requests attorneys' fees in her Complaint (Complaint, ¶ 46(d)), and the CPPA provides that a plaintiff may recover reasonable attorneys' fees. D.C. Code § 28-3905(k)(2)(B).

While not disputing that attorneys' fees are potentially recoverable, Plaintiff argues that attorneys' fees should not be considered in determining the amount in controversy because the amount of fees that may eventually be recovered is "speculative." But, this is always the case. If attorneys' fees could be excluded from consideration merely because they had not yet been incurred (and thus the ultimate amount of fees is yet unknown), then the requirement that fees allowable by statute be considered as part of the amount in controversy would be a nullity. That cannot be the case.

Recognizing that fees are appropriately considered, but cannot be known to a certainty at the time of removal, courts in this District have taken reasoned approaches to incorporating fees into the amount in controversy determination. In *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293 (D.D.C. 2013), a case also alleging consumer claims under the CPPA, the court determined that fees should be estimated "by calculating a reasonable contingency fee" of 33%. *Id.* at 301. The court explained that this approach was "particularly fitting" because the plaintiff's attorneys were working on a contingency (as is certainly the case here), and the allocation of fees in a manner related to the plaintiff's alleged potential recovery struck a proper balance between considering the fees in the determination and preventing the fees from driving the amount in controversy. *Id.* Using this approach, the $75,000 amount in controversy could be met here by $7,500 in statutory damages, $48,750 in punitive damages (a 6.5:1 ratio of punitive damages to actual damages), and $18,750 in attorneys' fees (approximately 33% of the $56,250 recovery of damages). Of course, because the amount of alleged statutory damages is necessarily greater than $7,500 (even though we do not know by exactly how much), both the punitive damages and the

ratio of punitive damages to actual damages necessary to meet the amount in controversy requirement is even lower.

In *Parker-Williams*, the district court similarly considered attorneys' fees in the amount in controversy determination despite recognizing that "the Court lacks the information required to calculate these fees." 2014 WL 3278585 at *3. Unlike *Zuckman*, the court did not attempt to quantify the unknown fees, but instead, recognizing that the amount in controversy determination does not require "an item-by-item accounting," used "common sense" to conclude that "it is difficult to believe that the amount in controversy here could be lower than $75,000 when the fees are factored in along with compensatory and punitive damages." *Id.* at *2-3.

So too here. When considering alleged statutory damages in excess (and likely well in excess) of $7,500, alleged punitive damages, and any reasonable amount of attorneys' fees, it is apparent that the amount in controversy exceeds the $75,000 threshold requirement.

4.    Any Uncertainty Should be Resolved by Limited Jurisdictional Discovery

Plaintiff's primary argument against jurisdiction is that a calculation of the amount in controversy at this time would be "speculative" – indeed, it is notable that Plaintiff ***does not*** argue that the amount in controversy is less than $75,000, even though it is Plaintiff's burden to show that the amount in controversy does not exceed $75,000. Plaintiff cannot meet this burden because, even assuming the bare minimum of $7,500 in alleged statutory damages, the applicable standard for computing the jurisdictional amount in cases involving punitive damages compels a determination that the amount in controversy requirement has been satisfied. *See Nwachukwu*, 223 F. Supp. 2d at 66 ("[T]he court has subject matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount.").

Nonetheless, much uncertainty could be eliminated by Plaintiff herself. Instead of merely claiming that Defendant is "speculating" about how many purchases she made, Plaintiff could have filed an affidavit setting forth exactly how many purchase she made. Plaintiff's failure to offer this basic evidence implies that it would not be helpful to her position. Thus, if the Court

12

were to find that a more complete evidentiary record is necessary to determine the amount in controversy, Defendant requests that the Court either (1) allow Defendant to take limited jurisdictional discovery to determine the number of purchases made by Plaintiff; or (2) compel Plaintiff to submit an affidavit setting forth her number of purchases.

Courts have recognized that limited jurisdictional discovery is appropriate when a district court is unable to determine, on the existing record, whether it has jurisdiction. *See Crane v. Carr*, 814 F.2d 758, 764 (D.C.Cir. 1987) (finding that "reasonable discovery addressing the jurisdictional issue" should be permitted); *McPhail*, 529 F.3d at 954 ("[T]o the extent that a defendant must rely on the federal discovery process to produce this evidence [regarding the jurisdictional facts] . . . he may ask the court to wait to rule on the remand motion until limited discovery has been completed . . . ."); *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 985 (S.D.Cal. 2005) ("Jurisdictional discovery is permissible when the Court is unable to determine, on the existing record, whether it has jurisdiction."); *McCraw v. Lyons*, 863 F. Supp. 430, 435 (W.D.Ky. 1994) ("If Plaintiff seeks remand, Defendant may request that the Court delay a decision pending completion of limited discovery.") Here, limited discovery targeted solely at the number of purchases made by Plaintiff would clarify the exact amount of statutory damages put at issue by Plaintiff.

Alternatively, when this District Court was faced with a similar issue in *Zuckman* – uncertainty regarding the number of purchases made by a plaintiff asserting a claim under the CPPA – the court addressed a request for jurisdictional discovery by requiring the plaintiff to submit an affidavit setting forth the number of purchases that he made during the relevant period. 958 F. Supp. 2d at 298. A similar Order here, requiring Plaintiff to submit an affidavit stating how many times she purchased a "Spring Valley" herbal supplement product from Defendant in the District of Columbia from late-2013 to the present, would resolve any uncertainty regarding the amount of statutory damages put at issue by Plaintiff.

IV.     **This Action was Also Properly Removed under CAFA**

A.     **Legal Standard**

Under CAFA, "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). Plaintiff does not dispute that this action satisfies both the amount in controversy and the minimal diversity requirements of CAFA. (*See* Notice of Removal [DK #1], ¶¶ 15-18; Vaidyanathan Decl., ¶¶2, 4.) Instead, Plaintiff's sole argument against the Court exercising jurisdiction under CAFA is that Plaintiff does not bring a class action.

CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). In passing CAFA, Congress emphasized that the term "class action" should be defined broadly to prevent "jurisdictional gamesmanship":

> [T]he Committee further notes that the definition of "class action" is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labeled "class actions" by the named plaintiff or the state rulemaking authority. Generally speaking, lawsuits that resemble a purported class action should be considered class action for the purpose of applying these provisions.

S. Rep. No. 109-14, at 35 (2005). Thus, courts must look beyond the face of a Complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name. *See id.; see also State of Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 423-24 (5th Cir. 2008) ("[F]ederal courts look to the substance of [an] action and not only at the labels that the parties may attach."). In making this determination, Congress explicitly states that CAFA's "provisions should be read broadly, with a strong preference that interstate actions

should be heard in federal court." S. Rep. No. 109-14, at 43 (2005). Congress instructs district courts to "err in favor of exercising jurisdiction." *Id.* at 42.

Because this action was filed in state court, and thus not under Rule 23 of the Federal Rules of Civil Procedure, the question is whether the Plaintiff's claim requires compliance with a "similar State statute or rule of judicial procedure . . . ." 28 U.S.C. § 1332(d)(1)(B). "A state statute or rule is similar to Federal Rule of Civil Procedure 23 if it closely resembles Rule 23 or is like Rule 23 in substance or in essentials." *National Consumer League v. Bimbo Bakeries USA*, 46 F.Supp.3d 64, 76 (D.D.C. 2014). The "hallmarks of Rule 23 class actions are adequacy of representation, numerosity, commonality, typicality, and the requirement of class certification." *Id.*

**B.    The Court has Jurisdiction Because Plaintiff's Representative Claim under the CPPA Must be Litigated as a Class Action**

Plaintiff argues that ***the CPPA*** is not a "similar State statute or rule of judicial procedure" because ***it*** does not contain the procedural "hallmarks" of Rule 23. This position is supported by several prior district court decisions cited by Plaintiff, in which courts have remanded cases under the CPPA based on the determination that ***the CPPA*** is not sufficiently equivalent to Rule 23. *See, e.g. Bimbo Bakeries*, 46 F. Supp. 3d at 76 (finding CPPA claim could not be removed under CAFA because of the "lack of class certification requirement in the [CPPA] statute"); *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 101 (D.D.C. 2008) (finding CPPA claim not removable under CAFA because the CPPA "specifically authorizes a private attorney general suit without any reference to class action requirements"). Defendant respectfully submits, however, that this position is flawed because the CPPA provides for standing and substantive legal remedies, but it does not set forth the ***procedure*** by which an individual may obtain monetary remedies on behalf of absent third parties. *See Margolis v. U-Haul Int'l, Inc.*, No. 2007 CA 005245 B, 2009 WL 5788369 (D.C. Super Dec. 17, 2009) (*Margolis I*) ("[T]he [CPPA] statute does not address how a person who brings [a representative claim for damages] is to obtain damages 'payable to the consumer.'"). The question, therefore, is not whether ***the CPPA***

is a statute similar to Rule 23, but instead whether Plaintiff's representative claim for money damages under the CPPA requires compliance with the District of Columbia's class action procedures. It does.

As an initial matter, Plaintiff argues that courts in this District have "uniformly" remanded "private attorney general" cased filed under the CPPA, and asks this Court to follow suit. As a factual matter, that contention is incorrect. *See Silvious v. Ungar's Food Products Inc.*, 2010 WL 3324747 at *1 n.1 (D.D.C. Aug. 24, 2010) (finding that removal of CPPA claim was proper under CAFA because while "Plaintiff contends that this action is not a class action, . . . his allegations and demand for relief belie this contention); *Margolis v. U-Haul Int'l, Inc.*, 818 F. Supp. 2d 91, 96 (D.D.C. 2011) (*Margolis II*) (case removed under CAFA after Superior Court found that CPPA plaintiff was required to comply with class certification requirements). As a legal matter, while prior district court decisions may be persuasive authority, they are not binding on this Court. *See Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.*, 240 F.3d 956, 965 (11th Cir. 2001).

Moreover, where – as here – there is an issue of local law, the D.C. Circuit has recognized that "the courts of the District of Columbia are the appropriate expositors" of local law and, therefore, "deferring to a well-reasoned, carefully researched opinion on local law [by the Superior Court] is both appropriate and in keeping with the Congressional purpose reorganizing the judiciary of the District of Columbia." *Norwood v. Marrocco*, 780 F.2d 110, 112-13 (D.C.Cir. 1986) (following District of Columbia Superior Court decision interpreting local statute over prior D.C. Circuit decision). With respect to this specific issue, the Court of Appeals has stated that the question of whether a representative claim under the CPPA needs to be litigated as a class action is a matter of District of Columbia law that should be decided by local courts. *In re U-Haul Int'l, Inc.*, 2009 WL 902414 at *1 (D.C.Cir. Apr. 6, 2009).

This very question was decided by the District of Columbia Superior Court in *Margolis I*.[1] 2009 WL 5788369. After an extensive analysis of the statutory history and purpose of the CPPA, the court held that "to the extent that [plaintiff] is asserting claims for money damages under the CPPA on behalf of third parties, the plaintiff must seek class certification and otherwise comply with Rule 23." 2009 WL 5788369.

In finding that a representative claim for money damages under the CPPA requires compliance with class action procedures, the *Margolis* court recognized that the CPPA is not a procedural statute and "that nothing in the statute indicates that the Superior Court Rules of Civil Procedure are inapplicable to representative actions for damages under the CPPA or that a claim for money damages on behalf of third parties need not proceed in accordance with Rule 23." *Margolis*, 2009 WL 5788369. To the contrary, the court explained that Rule 1 of the Rules of Civil Procedure provides that the Rules – including Rule 23 – "govern the procedure in all suits of a civil nature." *Id.* Thus, the court found that a plaintiff seeking monetary relief under the CPPA for absent third parties must comply with the class action procedures under Rule 23:

> The Court finds that Rule 23 of the Superior Court Rules of Civil Procedure is applicable to claims for money damages brought under the CPPA on behalf of third parties. . . . Nothing in the [CPPA] statute indicates any intention by the legislative branch to abrogate the requirements of Rule 23 in cases where an individual is seeking money damages under the CPPA on behalf of third parties.

*Id.*[2]

---

[1] The *Margolis* case was originally filed as a "private attorney general" action in the District of Columbia Superior Court. *Margolis II*, 818 F.Supp.2d at 96. When the defendant removed the case to the federal district court under CAFA, the district court remanded based on the conclusion that a representative claim under the CPPA was not a class action. *Id.* In denying leave to appeal, the Court of Appeals noted that whether a representative claim under the CPPA needed to be litigated as a class action was a matter of District of Columbia law that needed to be decided by local courts. *In re U-Haul Int'l, Inc.*, 2009 WL 902414 at *1 (D.C.Cir. Apr. 6, 2009). On remand, this issue was decided in the affirmative. *Margolis I*, 2009 WL 5788369. The case was again removed to the federal district court under CAFA, where it was decided on the merits. *Margolis II*, 818 F.Supp.2d at 97.

[2] The *Margolis* decision was followed by the District of Columbia Superior Court in *Donald Rotunda v. Marriott International, Inc.*, Case No. 2011 CA 006829 B. That case is currently on appeal, with oral

The *Margolis* court further recognized that compliance with class action procedures was not only required by District of Columbia law, but also consistent with the Constitutional requirement that proper procedures be used to protect the due process rights of absent parties. *Id.* Specifically, the Supreme Court has held that in a representative action for damages, absent third parties must receive notice of the proceedings, an opportunity to opt out, and adequate representation. *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see In re Veneman*, 309 F.3d 789, 795 (D.C.Cir. 2002) ("before a court can bind absent class members concerning claims wholly or predominantly for money damages, due process requires that they receive adequate notice and an opportunity to opt out of the action.").

Thus, both as a matter of District of Columbia law and Constitutional due process law, Plaintiff's Complaint under the CPPA for money damages on behalf of absent third parties requires compliance with class action procedures. Plaintiff cannot avoid federal jurisdiction under CAFA merely by failing to label her lawsuit as a class action. S. Rep. No. 109-14, at 35 (2005) (CAFA "should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority.") Put differently, if this case remained in the D.C. Superior Court, Plaintiff would need to satisfy the procedural requirements of Rule 23 in order to seek monetary relief on behalf of "the general public," which she requests in her Complaint. (Complaint, ¶ 46(b).) This alone establishes that this case is a "class action" under CAFA and belongs in this Court.

Finally, citing to 28 U.S.C. §1332(d)(11)(B)(ii)(III), Plaintiff argues that this case is not removable under CAFA because "CAFA contains an explicit exception for cases like those filed under the CPPA where all claims are brought on behalf of the general public pursuant to a state statute." (Motion, p.19.) The exception in 28 U.S.C. § 1332(d)(11)(B)(ii)(III), however, is inapplicable to class actions; that section provides that a federal court lacks jurisdiction over a

---

argument expected before the District of Columbia Court of Appeals in late-May or June, 2015. In part, the Court of Appeals will consider the question of whether an individual plaintiff under the CPPA may bring an action for money damages in a representative capacity on behalf of the general public without complying with the requirements of Superior Court Rule of Civil Procedure 23.

"mass action" in which "all of the claims in the action are asserted on behalf of the general public." *Id.* This section is further inapplicable because not ***all*** of the claims here are being asserted on behalf of the general public. Plaintiff brings claims both on behalf of herself ***and*** on behalf of the general public. For both of these reasons, 28 U.S.C. § 1332(d)(11)(B)(ii)(III) provides Plaintiff with no relief.

**V.      Plaintiff Should Not Be Awarded Attorneys' Fees**

In addition to remand, Plaintiff seeks an award of attorneys' fees incurred in connection with her motion. An award of attorneys' fees is appropriate only where "non-removability is obvious or contrary to well-settled law." *Johnson-Brown v. 220 M St. LLC*, 257 F. Supp. 2d 175, 181 (D.D.C. 2003). Moreover, "[t]his Court is reluctant to award costs and attorneys' fees in the absence of evidence of either a frivolous filing or bad faith." *Ibrahim v. 1417 N St. Assocs., L.P.*, 950 F. Supp. 460, 408 (D.D.C. 1997). As discussed above, this action was properly removed and remand should be denied. Thus, the request for attorneys' fees should be moot. In any event, an award of attorneys' fees would not be appropriate here.

**VI.      Conclusion**

For the reasons explained above, this Court has original jurisdiction over this action both under diversity jurisdiction and under CAFA. Defendant respectfully requests that the Court deny Plaintiff's motion to remand in its entirety.

Respectfully submitted,

_____/s/_____
Scott N. Godes, Esq.
DC Bar No. 463674
Devin J. Stone, Esq.
DC Bar No. 1022055
**BARNES & THORNBURG LLP**
1717 Pennsylvania Avenue, NW

Washington, DC  20006
Telephone:  (202) 289-1313
Facsimile:  (202) 289-1330
E-mail:  scott.godes@btlaw.com
E-mail:  devin.stone@btlaw.com

*Attorneys for Defendant*
*Walmart Stores, Inc.*

May 1, 2015